ATTACHMENT B

**CORPORATE COMPLIANCE MONITOR**

The duties and authority of the Corporate Compliance Monitor (the "Monitor"), and the obligations of HSBC Holdings plc, a financial institutions holding company organized under the laws of England and Wales ("HSBC Holdings") on behalf of itself and its subsidiaries and affiliates, with respect to the Monitor and the Department, are as described below.  To the extent that HSBC Holdings' compliance with its obligations as set forth below requires it, HSBC Holdings agrees to require that its wholly-owned subsidiaries comply with the requirements and obligations set forth below, to the extent permissible under locally applicable laws and regulations, and the instructions of local regulatory agencies.

1.  The Monitor will for a period of up to five (5) years from the date of his engagement (the "Term of the Monitorship") evaluate, in the manner set forth in Paragraphs 2 through 8 below, the effectiveness of the internal controls, policies and procedures of HSBC Holdings and its subsidiaries (collectively, "HSBC Group") as they relate to HSBC Group's ongoing compliance with the Bank Secrecy Act, International Emergency Economic Powers Act, Trading With The Enemy Act and other applicable anti-money laundering laws (collectively, the "anti-money laundering laws"), as well as the enumerated remedial measures

identified in paragraph 81 of Attachment A of the Agreement, and take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate").

2. HSBC Holdings shall cooperate fully with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about HSBC Holdings' compliance program within the scope of the Mandate in accordance with the principles set forth herein and applicable law, including applicable data protection and labor laws and regulations.  To that end, HSBC Holdings shall:  facilitate the Monitor's access to HSBC Group's documents and resources; not limit such access, except as provided in this paragraph; and provide guidance on applicable local laws (such as relevant data protection and labor laws). HSBC Holdings shall provide the Monitor with access to all information, documents, records, facilities and/or employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement.  Any disclosure by HSBC Holdings to the Monitor concerning possible violations of the anti-money laundering laws shall not relieve HSBC Holdings of any otherwise applicable obligation to truthfully disclose such matters to the Department.

a. The parties agree that no attorney-client relationship shall be formed between HSBC Holdings and the Monitor.

b. In the event that HSBC Holdings seeks to withhold from the Monitor access to information, documents, records, facilities and/or employees of HSBC Group which may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where HSBC Holdings reasonably believes production would otherwise be inconsistent with applicable law, HSBC Holdings shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If the matter cannot be resolved, at the request of the Monitor, HSBC Holdings shall promptly provide written notice to the Monitor and the Department. Such notice shall include a general description of the nature of the information, documents, records, facilities and/or employees that are being withheld, as well as the basis for the claim. The Department may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees. To the extent HSBC Holdings or any entity within HSBC Group has provided information to the Department in the course of the investigation leading to this action pursuant to a non-waiver of privilege agreement, HSBC Holdings and the Monitor may agree to

production of such information to the Monitor pursuant to a similar non-waiver agreement.

    3.    To carry out the Mandate, during the Term of the Monitorship, the Monitor shall conduct an initial review and prepare an initial report, followed by at least four (4) follow-up reviews and report as described below.  With respect to each review, after meeting and consultation with HSBC Holdings and the Department, the Monitor shall prepare a written work plan, which shall be submitted no fewer than sixty (60) calendar days prior to commencing each review to HSBC Holdings and the Department for comment, which comment shall be provided no more than thirty (30) calendar days after receipt of the written work plan.  The Monitor's work plan for the initial review shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the Mandate, including by developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of filing of this Agreement with the Court, but in developing such understanding the Monitor is to rely to the extent possible on available information and documents provided by HSBC Holdings, and it is not intended that the Monitor will conduct his or her own inquiry into those historical events.  In developing each work plan and in carrying out the reviews

pursuant to such plans, the Monitor is encouraged to coordinate with HSBC Group personnel including auditors and compliance personnel and, to the extent the Monitor deems appropriate, the Monitor may rely on HSBC Group processes, on the results of studies, reviews, audits and analyses conducted by or on behalf of HSBC Group and on sampling and testing methodologies.  The Monitor is not expected to conduct a comprehensive review of all business lines, all business activities or all markets.  Any disputes between HSBC Holdings and the Monitor with respect to the work plan shall be decided by the Department in its sole discretion.

4.   The initial review shall commence no later than ninety (90) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by HSBC Holdings, the Monitor and the Department), and the Monitor shall issue a written report within ninety (90) calendar days of initiating the initial review, setting forth the Monitor's assessment and making recommendations reasonably designed to improve the effectiveness of HSBC Group's program for ensuring compliance with the anti-money laundering laws as well as HSBC Group's implementation and adherence to the remedial measures in paragraph 81 of Attachment A of the Agreement.  The Monitor is encouraged to consult with HSBC Holdings concerning his or her findings and recommendations on an ongoing basis, and to consider and reflect HSBC Holdings'

comments and input to the extent the Monitor deems appropriate. The Monitor need not in its initial or subsequent reports recite or describe comprehensively HSBC Group's history or compliance policies, procedures and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations for improvement or which the Monitor otherwise concludes merit particular attention.  The Monitor shall provide the report to the Board of Directors of HSBC Holdings and contemporaneously transmit copies to the Chief of the Asset Forfeiture and Money Laundering Section, Criminal Division, U.S. Department of Justice, at 1400 New York Avenue N.W., Bond Building, Fourth Floor, Washington, DC 20530; the Board of Governors of the Federal Reserve System, and the United Kingdom's Financial Services Authority.  After consultation with HSBC Holdings, the Monitor may extend the time period for issuance of the report for up to thirty (30) calendar days with prior written approval of the Department.

    5.   Within ninety (90) calendar days after receiving the Monitor's report, HSBC Holdings shall adopt all recommendations in the report; provided, however, that within sixty (30) calendar days after receiving the report, HSBC Holdings shall notify the Monitor and the Department in writing of any recommendations that HSBC Holdings considers unduly burdensome, inconsistent with local or other applicable law or regulation,

impractical, costly or otherwise inadvisable. With respect to any recommendation that HSBC Holdings considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, costly or otherwise inadvisable, HSBC Holdings need not adopt that recommendation within that time but shall propose in writing an alternative policy, procedure or system designed to achieve the same objective or purpose. As to any recommendation on which HSBC Holdings and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after HSBC Holdings serves the written notice. In the event HSBC Holdings and the Monitor are unable to agree on an acceptable alternative proposal, HSBC Holdings shall promptly consult with the Department, which will make a determination as to whether HSBC Holdings should adopt the Monitor's recommendation or an alternative proposal, and HSBC Holdings shall abide by that determination. Pending such determination, HSBC Holdings shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Department.

6. The Monitor shall undertake four (4) follow-up reviews to carry out the Mandate. Within ninety (90) calendar days of initiating each follow-up review, the Monitor shall: (a) complete the review; (b) certify whether the compliance program of HSBC Group, including its policies and procedures, is reasonably designed and implemented to detect and prevent violations within HSBC Group of the anti-money laundering laws; (c) certify whether HSBC Holdings is implementing and adhering to the remedial measures set forth in paragraph 81 of Attachment A of the Agreement; and (d) report on the Monitor's findings in the same fashion as set forth in paragraph 4 with respect to the initial review. The first follow-up review shall commence one year after the initial review commenced. The second follow-up review shall commence one year after the first follow-up review commenced. The third follow-up review shall commence one year after the second follow-up review commenced. The fourth follow-up review shall commence one year after the third follow-up review commenced. After consultation with HSBC Holdings, the Monitor may extend the time period for these follow-up reviews for up to sixty (60) calendar days with prior written approval of the Department.

7. In undertaking the assessments and reviews described in Paragraphs 3 through 6 of this Agreement, the Monitor shall formulate conclusions based on, among other things: (a)

B-8

inspection of relevant documents, including HSBC Group's current anti-money laundering policies and procedures; (b) on-site observation of selected systems and procedures of HSBC Group at sample sites, including internal controls and record-keeping and internal audit procedures; (c) meetings with, and interviews of, relevant employees, officers, directors and other persons at mutually convenient times and places; and (d) analyses, studies and testing of HSBC Group's compliance program with respect to the anti-money laundering laws.

8.   Should the Monitor, during the course of his or her engagement, discover that HSBC Group or any individual within HSBC Group has engaged in questionable, improper or illegal practices with respect to the anti-money laundering laws (a) after the date on which this Agreement is signed or (b) that have not been adequately dealt with by HSBC Group (collectively "improper activities"), the Monitor shall promptly report such improper activities to HSBC Holdings' Chief Legal Officer for further action.  If the Monitor believes that any improper activity or activities may constitute a significant violation of law, the Monitor should also report such improper activity to the Department.  The Monitor should disclose improper activities in his or her discretion directly to the Department, and not to the Chief Legal Officer, only if the Monitor believes that disclosure to the Chief Legal Officer would be inappropriate

under the circumstances, and in such case should disclose the improper activities to the Chief Legal Officer of HSBC Holdings as promptly and completely as the Monitor deems appropriate under the circumstances. The Monitor shall address in his or her reports the appropriateness of HSBC Holdings' response to all improper activities, whether previously disclosed to the Department or not. Further, in the event that HSBC Holdings, or any entity or person working directly or indirectly within HSBC Group, refuses to provide information necessary for the performance of the Monitor's responsibilities, if the Monitor believes that such refusal is without just cause the Monitor shall disclose that fact to the Department. HSBC Holdings shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason. The Monitor may report any criminal or regulatory violations by HSBC Group or any other entity discovered in the course of performing his or her duties, in the same manner as described above.

9. The Monitor shall meet with the Department within thirty (30) days after providing each report to the Department to discuss the report. The reports will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, impede pending or potential government investigations and thus undermine the objectives of the

Monitorship. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the Department determines in its sole discretion that disclosure would be in furtherance of the Department's discharge of its duties and responsibilities or is otherwise required by law.

    10. At least annually, and more frequently if appropriate, representatives from HSBC Holdings and the Department will meet together to discuss the Monitorship and any suggestions, comments or improvements HSBC Holdings may wish to discuss with or propose to the Department.