

**U.S. Department of Justice**

*United States Attorney's Office*
*Eastern District of New York*

F.#2009R02380
DSS/CMT

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 1, 2015

BY ECF

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   United States v. HSBC Bank USA, N.A. and
              HSBC Holdings plc
              Criminal Docket No. 12-763 (JG)

Dear Judge Gleeson:

        Pursuant to the Court's July 1, 2013 order directing
the government to file quarterly reports regarding the
implementation of the deferred prosecution agreement ("DPA") in
the above-captioned matter, the government submits this status
report.  As described in more detail below, the independent
corporate compliance monitor Michael G. Cherkasky (the
"Monitor") has submitted his First Annual Follow-Up Review
Report.  Having reviewed and analyzed the Monitor's findings and
recommendations and discussed them with both the Monitor and
HSBC Holdings plc ("HSBC Group" or the "Bank"), the government
concurs with the Monitor's assessment that HSBC Group continues
to act in good faith to meet the requirements of the DPA.

        On January 20, 2015, the Monitor submitted his First
Annual Follow-Up Review of HSBC Group's anti-money laundering
("AML") and sanctions compliance program (the "Follow-Up
Review") as required under the terms of the DPA.  The Follow-Up
Review consisted of four inter-related components:  (a)
monitoring of HSBC Group-level enhancements to the AML and
sanctions compliance program; (b) phased reviews of six country
operations within HSBC Group; (c) thematic reviews of HSBC
Group's AML and sanctions compliance program as it relates to

its trade finance and private banking businesses; and (d) monitoring of remediation efforts, program enhancements, and efforts to meet obligations not otherwise addressed.

Overall, the Monitor believes that HSBC Group has made progress in developing an effective AML and sanctions compliance program and is better protected from and positioned to detect financial crime than when it entered into the DPA in December 2012.  Specifically, the Monitor found that HSBC Group has made progress in the areas of risk assessment, "Know Your Customer" information and customer due diligence processes, compliance monitoring and testing, transaction monitoring alert adjudication and suspicious activity reporting, distribution of information to management, responses to potential financial crime violations, and incentivizing AML and sanctions compliance through compensation adjustment.  However, in certain instances, the Monitor believes that HSBC Group's progress has been too slow.  The Monitor does not believe this is the result of bad faith or lack of commitment by HSBC Group's senior leadership, but does believe that HSBC Group can – and must – do more.

In the last year, HSBC Group took a significant first step toward meeting the most stringent requirement under the DPA, namely that it implement global AML standards based on the highest or most effective standards in any location where it operates. In 2014, HSBC issued Group-wide AML and sanctions policies and procedures.  The Monitor believes that these policies are consistent with United Kingdom, European Union, Hong Kong and United States requirements, as well as global best practices.  As such, in many cases, these policies impose requirements upon HSBC Group entities well beyond the requirements of local laws and regulations.

While adopting strong written policies is a significant step, it is only part of the equation.  At present, the Monitor believes HSBC Group has a substantial amount of work left to do to implement its written policies.  In the Monitor's view, two of the greatest impediments to HSBC Group's implementation of a sustainable compliance program are its corporate culture and its compliance technology.  A strong corporate culture is one where senior executives, mid-level managers, and employees across business lines accept and believe in the importance of rigorous AML and sanctions compliance controls.  The Monitor recognizes that a true cultural transformation in an institution as large and geographically diverse as HSBC Group and in an industry as challenged as the

financial services industry is a massive undertaking.  In the last year, the Monitor has seen a number of positive shifts in HSBC Group's internal emphasis on AML and sanctions compliance. The Monitor believes that the most significant development in HSBC Group's progress toward cultural transformation is the success that the Bank has had in securing participation from its business lines in working to enhance HSBC Group's AML and sanctions compliance program.  The Monitor believes that it is self-evident that business must bear the ultimate responsibility for effective compliance.  During the past twelve months, the Monitor found that senior managers of the Bank's four business lines have convincingly accepted responsibility for enhancing HSBC Group's AML and sanctions compliance program, including taking primary responsibility for implementing, through the business lines, the Bank's new AML and sanctions policies and procedures.

While this acceptance of responsibility by senior executives and the resulting tone from the top is important, it is not sufficient for a cultural transformation. Notwithstanding the attitude of HSBC Group's senior executives, the Monitor observed other indicators that some of HSBC Group's historical cultural deficiencies continue to pervade its operations today.  For example, during the United States country review, the Monitor found that senior managers of HSBC Bank USA's Global Banking and Markets ("GBM") business line inappropriately pushed back against adverse findings by the HSBC Global Internal Audit team and HSBC Bank USA's Compliance Testing and Control ("CTAC") team arising from separate reviews in early 2014 of GBM's "Know Your Customer" practices.  More specifically, the Monitor found that the GBM senior managers resisted the review in a manner that caused the final audit report to be more favorable to the business than it would otherwise have been, and similarly delayed and interfered with the work of the CTAC team.  In the Monitor's view, GBM's interactions with both Internal Audit and CTAC were marked by combativeness, overblown complaints about factual inaccuracy, and a basic lack of cooperativeness.  The Monitor concluded that the GBM business in the United States demonstrated a deficient culture that had not fully accepted the role and legitimacy of the Internal Audit and control functions.

Once senior executives at HSBC Group learned of this problem, they took a number of steps in response.  As to the responsible individuals, the Regional Head of the Americas for GBM will be reassigned, pending regulatory approval of his

4

successor in the United States, and will no longer be a member of GBM's Executive committee.  Furthermore, as part of the 2014 year-end bonus process, this individual had a 50% negative adjustment to his 2014 bonus which resulted in a 14% decrease in his total compensation from the prior year.  Another senior HSBC Executive involved in the incident also received a negative adjustment to his 2014 bonus.  In addition, HSBC Group's Chief Executive issued a directive to senior HSBC employees regarding cooperation with Internal Audit.  HSBC Group's Chief Executive wrote that, "At my direction, our Global Internal Audit team is holding us to a higher standard than in the past.  Therefore, we should expect to have more insightful and critical audits."  The Chief Executive further directed that "employees should feel that they are able to constructively present different viewpoints" but "employees must respect Internal Audit's independent opinions.  Rudeness, cynicism, or any attempt to intimidate are not acceptable and will not be tolerated."

        Since a final decision regarding reassignment of the Regional Head of the Americas for GBM has not yet been effected, both the Monitor and the government will continue to assess the situation to ensure that the final actions are proportionate and send the appropriate message.  The Monitor found it encouraging, however, that HSBC Group's Internal Audit function, and also the CTAC team in the United States, have challenged business-side executives and have issued hard-hitting reports.  The Monitor believes these compliance achievements would not have happened within HSBC Group two years ago and that they demonstrate significant positive change in the oversight functions.

        Aside from corporate culture, one of the other biggest impediments to HSBC Group's development of a sustainable compliance program, in the Monitor's view, is its compliance technology.  The Monitor believes, despite progress in improving its compliance technology, this remains an area of material weakness in which a great deal of work remains to be done.  Specifically, HSBC Group's compliance technology systems continue to suffer from fragmentation and lack of connectivity.  The lack of connectivity between systems prevents the Bank's investigators from easily reviewing a customer's banking history when evaluating potentially suspicious activity and inhibits the adequate collection and analysis of customer due diligence information.  The Monitor believes HSBC Group's future compliance technology plans are reasonably calculated to produce an effective compliance program – if the plans can be successfully executed.  Execution of these plans will be

5

difficult, expensive, and time consuming.  Nevertheless, HSBC
Group's leadership has assured the Monitor that this initiative
has the highest priority.  That is crucial, because the Monitor
believes that successful execution of these technology
enhancements is critical to the successful completion of the
Monitorship.

        The Monitor has submitted a number of specific
recommendations aimed at addressing the remaining AML and
sanctions compliance deficiencies.  HSBC Group already has
agreed to implement many of the Monitor's recommendations, and
it continues to work collaboratively with the Monitor regarding
the Bank's proposed modifications to several of the Monitor's
recommendations.  The government will continue to rigorously
evaluate HSBC Group's engagement with the Monitor to ensure that
HSBC Group acts expeditiously to satisfy the requirements of the
DPA.

        In sum, as the Monitor's report indicates, HSBC has
made material progress toward meeting the most stringent
compliance standards imposed to date upon a global financial
institution.  But as the report also makes clear, HSBC must
continue and enhance its progress in order to maintain
compliance with the DPA's very strict terms.  The Department of
Justice will continue to closely monitor HSBC's progress in

6

complying with the DPA's elevated standards of compliance, and
stands ready to pursue all available remedies should HSBC fail
to adhere to the DPA's terms.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                     By:      _____/s/_____
                              Alexander A. Solomon
                              Daniel S. Silver
                              Assistant U.S. Attorneys
                              (718) 254-6074/6034

                              M. KENDALL DAY
                              Chief, Asset Forfeiture and
                              Money Laundering Section
                              Criminal Division
                              United States Department of
                              Justice
                     By:      _____/s/_____
                              Craig M. Timm
                              Deputy Chief
                              (202) 598-2279

cc:  Counsel for Defendants (via ECF)