

**BOARD OF GOVERNORS**
OF THE
**FEDERAL RESERVE SYSTEM**
WASHINGTON, D.C. 20551

DIVISION OF BANKING
SUPERVISION AND REGULATION

May 29, 2015

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        **Re:**    USA v. HSBC Bank USA, N.A., et al., New York Eastern District Court
                Case Number 1:12-cr-00763-JG

Dear Judge Gleeson:

       The Board of Governors of the Federal Reserve System ("Board") respectfully submits this letter in the above-reference matter in support of the Department of Justice's request to seal the HSBC Monitor First Annual Follow-up Review Report ("Monitor Report" or "Report"). The U.S. Department of Justice ("DOJ") was ordered to file with the Court the Monitor Report referred to in the government's April 1, 2015 report. Filing of the Report with the Court would result in the Report becoming part of the public record and accessible to the public unless the filing is made under seal.

       The Board supports the Monitor's position that the First Annual Follow-Up Review Report" ("Monitor Report" or "Report") should not be publicly filed. Public disclosure will impair both the Monitor's ability to efficiently carry out his various responsibilities and the Board's ability to effectively supervise banking organizations, including HSBC Holdings plc, London, United Kingdom ("Holdings") and HSBC North America Holdings Inc., New York, New York ("HNAH").

       The Board is the consolidated supervisor of HNAH and the primary U.S. federal regulator of Holdings, both of which are registered bank holding companies. On December 11, 2012, Holdings consented to an Order to Cease and Desist issued by the Board, Docket 12-062-B-FB ("Order").[1] The Order was designed to correct serious deficiencies with Holdings' firm-wide compliance risk management program and to address compliance with applicable United States federal and state laws, rules, and regulations, including those pertaining to U.S. economic

---

[1] See http://www.federalreserve.gov/newsevents/press/enforcement/enf20121211a2.pdf.

sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Among other requirements, the Order directed Holdings to submit an acceptable compliance program that incorporated certain compliance elements to achieve compliance with U.S. laws ("U.S. Law Compliance Program"). To ensure that the OFAC elements of the U.S. Law Compliance Program are functioning effectively to detect, correct and report OFAC sanction transactions when they occur, the Order required Holdings to conduct, on an annual basis, a review of OFAC compliance policies and their implementation and an appropriate risk-focused sampling of U.S. dollar payments (the "OFAC Compliance Review"). The Order also required that the OFAC Compliance Review be conducted by an independent consultant approved by the Federal Reserve Bank of Chicago ("Reserve Bank") and the Financial Services Authority ("FSA"), predecessor to the Financial Conduct Authority ("FCA").

Holdings selected Michael Cherkasky as the independent consultant to conduct the OFAC Compliance Review required under the Order. The Reserve Bank approved the selection of Mr. Cherkasky by letter dated October 17, 2013. Mr. Cherkasky was also approved by the DOJ to serve as the independent corporate compliance monitor for the Deferred Prosecution Agreement between DOJ, Holdings, and HSBC Bank USA, N.A. ("HBUS"), a banking subsidiary indirectly owned and controlled by HNAH. Similarly, Mr. Cherkasky was approved by the FCA as the "skilled person" under Section 166 of the Financial Services and Markets Act.

**The Impact of Public Disclosure of the Monitor Report to the Board of Governors**

Because Mr. Cherkasky serves multiple roles that involve similar responsibilities, the Monitor Report reflects and integrates information, analyses and findings related to the work he performed in all three capacities (i.e., independent consultant, corporate compliance monitor and skilled person). As a result, public disclosure of all or any portion of the Monitor Report would seriously impair both Mr. Cherkasky's ability to efficiently and effectively carry out his various responsibilities, including those as independent consultant to HSBC pursuant to the Order, and the Board's ability to carry out its responsibilities to supervise banking organizations, including Holdings and HNAH.

**Analysis**

**Public disclosure of the Monitor Report is likely to reduce the effectiveness of the Independent Consultant and thereby the Federal Reserve's oversight of Holdings and HNAH.** As noted above, in his role as independent consultant (IC), Mr. Cherkasky provides valuable information to the Federal Reserve regarding Holdings' OFAC compliance efforts. Public disclosure of Mr. Cherkasky's Monitor Report is likely to reduce his effectiveness as IC for a number of reasons. Because of the multiple roles held by Mr. Cherkasky, his work as Monitor and his work as IC inevitably overlap. It is to be anticipated that HSBC personnel may become less forthcoming and proactive with Mr. Cherkasky in all of his roles if they believe that the information they provide to him is likely to become public through disclosure of the Monitor Report. This lack of candor could affect the quality of the IC's reviews of Holdings' OFAC compliance efforts, as staff would be less forthcoming regarding potential shortcomings of those

efforts. It could impact Federal Reserve examiners similarly, thereby reducing the effectiveness of the Federal Reserve's supervision. Open and candid communications between examiners and regulated organizations are critical to the effectiveness of the Federal Reserve's ongoing supervision program. In fact, the bank examination privilege – which protects the confidentiality of certain deliberative information – exists to preserve the relationship between examiners and regulated organizations so that this type of communication will take place. *See In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 633-34 (D.C. Cir. 1992).

Similarly, public disclosure of the Report would likely cause foreign regulators to be reluctant or unwilling to authorize Mr. Cherkasky to investigate, conduct interviews and obtain access to supervisory information at Holdings' affiliated institutions in their respective jurisdictions. Such access and cooperation is essential to the work Mr. Cherkasky is performing in his role as IC under the Order, particularly given the global nature of Holdings' activities and its enterprise-wide global framework of policies and procedures. As a result, the Federal Reserve's oversight of Holdings' compliance program will likely be less effective because we will be deprived of the information regarding its foreign affiliates that the IC now provides us. In addition, without such robust oversight, it is possible that Holdings will be operating with a weaker consolidated global compliance program, including OFAC compliance program, and a weaker firm-wide compliance risk-management program in place, than it would if the IC were able to perform his function with the full cooperation of foreign regulators. The Board has a strong interest in avoiding such an outcome. As the consolidated supervisor of HNAH and the primary U.S. federal regulator of Holdings, the Board seeks to ensure that activities conducted by the institution outside the United States comply with applicable United States laws, rules, and regulations and that the institution maintains a strong commitment towards compliance. Indeed, the activities that led to the Federal Reserve's enforcement action against Holdings were primarily conducted in foreign offices where our supervisors have less visibility into the institution's operations.

**Public disclosure of the Monitor Report would reveal specific examination findings and vulnerabilities.** In several places, the Monitor Report identifies with specificity findings that regulators, including the Board and the Office of the Comptroller of the Currency, had noted in examination reports, and reveals other information contained in those reports. As noted above, examination reports are considered highly confidential. They are the subject of both an exemption from disclosure under the Freedom of Information Act, 5 U.S.C. 552(b)(8), and of common law bank examination privilege. *See, e.g., See In re Subpoena, supra.* The reports reflect examiners' opinions and supervisory assessments of an institution made as part of the open, collaborative process of bank examination, and confidentiality of these communications is critical to an effective supervisory process. In addition, the Monitor Report identifies several specific weaknesses in HSBC's OFAC compliance program. Public disclosure of these specific areas of concern could provide valuable information to criminals seeking to exploit HSBC's systems for criminal purposes.

**Public disclosure of the Monitor Report could lead to inconsistencies and inefficiencies in situations where both a DOJ monitor and an independent consultant are called for.** Where appropriate, certain Federal Reserve enforcement actions – such as the one against Holdings -- may require regulated organizations to retain an independent consultant to perform specific tasks

on behalf of that organization. In such cases, the Board will typically impose this type of requirement because the IC is able to provide specialized knowledge or expertise that the organization lacks, resources the organization itself lacks internally and a more objective viewpoint than that presented by the organization's management. Similarly, the DOJ at times requires an independent corporate compliance monitor to assist it in connection with deferred prosecution agreements. In such cases, as in this one, the efficiency of each position is enhanced by appointing the same person to perform both roles. For example, as noted above, some aspects of the Monitor Report reflect work undertaken by the Monitor in his capacity as IC. In addition, the broader view of the organization gained by the joint IC/monitor is undoubtedly helpful to DOJ and the Federal Reserve. Appointing the same person in both roles also avoids the problems of inconsistency that could arise if multiple reviewers were assigned to assess the same or similar aspects of an entity's operations.

If the dual roles result in an increased likelihood that the monitor/IC's work would become public, the Federal Reserve might feel compelled to forego the advantages of efficiency and the broad view of the organization that the monitor's work provides in order to protect the confidentiality of the IC's work product. A regulated entity might similarly be less willing to appoint the same individual as a monitor and IC. Thus, the benefits of appointing one individual as both IC and monitor could be lost if the IC's work is subject to a greater probability of disclosure if the IC is also appointed the monitor.

For the reasons stated above, the Board respectfully requests the Court to grant the government's request/motion to file the Monitor Report under seal.

Sincerely,

pp.

Jack Jennings
Senior Associate Director
Division of Banking Supervision and Regulation


Cc: Craig Timm, Esq.
Criminal Division
United States Department of Justice