Direct line: 0207 0668744
Local fax: 0207 0668745
Email: jeremy.marsden@fca.org.uk

**BY EMAIL ONLY**

Mr Craig M Timm
Deputy Chief
Asset Forfeiture and Money Laundering Section
Criminal Division
United States Department of Justice



**Financial Conduct Authority**
25 The North Colonnade
Canary Wharf
London
E14 5HS

Tel: +44 (0)20 7066 1000
Fax:+44 (0)20 7066 1099
www.fca.org.uk

1 June 2015

Our Ref:

Your Ref:

Dear Craig

## Judge Gleeson's request to file HSBC Monitor's 'First Annual Follow-Up Review Report'

1. I am writing on behalf of the FCA in my capacity as Head of Department in Retail Banking Supervision Division with specific responsibility for HSBC.

2. The Financial Services Authority (the "FSA") was the predecessor organisation of the Financial Conduct Authority (the "FCA"). The FSA was the UK's financial services regulator for conduct and prudential matters. It was re-constituted as the FCA on 1 April 2013 by the Financial Services Act 2012 with responsibility for conduct matters for all firms and prudential matters for some firms. Prudential responsibility for the largest firms including HSBC Bank plc was assigned to the Prudential Regulation Authority. For convenience, when I refer to the FCA in this letter, I also include the FSA before 1 April 2013.

3. I understand that the Court has issued an order directing the US Department of Justice (the "DoJ") to file with the Court the first annual follow-up review report of the independent monitor (the "Monitor") appointed for the HSBC Group (the "report"). I also understand that the DoJ will request that the Court file the report under seal.

4. The purpose of this letter is to set out:

    a. the background to the FCA's interest in this matter; and

1

b. the reasons why the FCA supports the DoJ's request that the report should be filed under seal.

**Background to the FCA's interest in this matter**

5. The FCA has a statutory objective under the Financial Services and Markets Act 2000 ("FSMA") to protect and enhance the integrity of the UK financial system. In doing this, we are focused on a number of priorities, including preventing the UK financial system from being used for a purpose connected with financial crime.

6. In addition, the FCA is required to monitor persons that fall within the UK Money Laundering Regulations 2007 (the "MLRs") for whom it is the supervisory authority and take necessary measures for the purpose of securing compliance by such persons with the requirements of those regulations. This includes monitoring and supervising the activities of HSBC Bank plc. Under these regulations HSBC Bank plc is required to ensure that its non-EEA branches and subsidiaries comply with standards equivalent to UK anti-money laundering ("AML") requirements, to the extent permitted by the law of the relevant non-EEA state.

7. The MLRs do not extent to HSBC Holdings plc ("Holdings"), the holding company of HSBC Bank plc, or relate to its non-EEA subsidiaries that are not subsidiaries of HSBC Bank plc. However, in response to AML and sanctions failings identified by the US authorities in 2012 the FCA used its powers under FSMA to issue a direction (the "Direction") to Holdings on 2 April 2013. Under the Direction, Holdings was, in summary, required to:

   a. establish a committee of the HSBC Board with a mandate to oversee matters relating to anti-money laundering, sanctions, terrorist financing and proliferation financing (Financial System Vulnerabilities Committee);

   b. review relevant Group policies and procedures to ensure that all parts of the HSBC Group are subject to standards equivalent to those required under UK requirements;

   c. appoint a Group Money Laundering Reporting Officer (Bob Werner) who is an FCA approved person, with responsibility for ensuring that systems and controls are in place across the Group, to ensure the Group is in compliance with all relevant legal and regulatory requirements; and

2

d.  employ an independent monitor to oversee the Group's compliance with UK anti-money laundering, sanctions, terrorist financing and proliferation financing requirements and to provide independent reporting to the HSBC Board committee and regulators.

8.  The instruction issued to Holdings to employ an independent monitor was to provide independent oversight of the implementation and ongoing operations of HSBC Group in complying with AML, sanctions, terrorist financing and proliferation financing obligations. This instruction required the appointment of a "skilled person" under section 166 of FSMA (the "section 166 notice"). FCA uses this power to obtain an independent view of specific activities of a firm.

9.  The Monitor has an obligation to review and report on HSBC Group's progress in designing policies and procedures that are sufficient to comply with the requirements of:

    a.  the deferred prosecution agreement (the "DPA") dated 11 December 2012, between the DoJ, Holdings and HSBC Bank USA, N.A; and

    b.  the Order to Cease and Desist (the "FRB C&D") dated 11 December 2012 issued to Holdings by the U.S. Board of Governors of the Federal Reserve System (the "FRB").

10. For reasons of efficiency, it was agreed that one common independent monitor be engaged by the DoJ, the FRB and the FCA. We require the Monitor to report to us annually, aligning our requirements with those of the DoJ.

11. Therefore the interest of the FCA in this matter, shared with the US authorities, is to provide the conditions most likely to enable HSBC Group to improve its financial crime systems and controls and thereby comply with its obligations under the DPA, the FRB C&D, the Direction and the section 166 notice.

**FCA's views on the potential public filing of the report**

12.  The FCA is committed to being open and transparent. We have a statutory responsibility under FSMA when discharging our functions to have regard to:

     a.  the desirability in appropriate cases of publishing information relating to persons on whom requirements are imposed by or under FSMA or requiring them to publish such information; and

     b.  the principle that the FCA should exercise its functions as transparently as possible.

13.  However, we also have responsibilities in relation to confidentiality. The FCA is in most circumstances prohibited from disclosing confidential information relating to a firm it regulates, unless the firm itself agrees. This protection of confidential information has been enshrined in UK law in section 348 of FSMA. A breach of these requirements is a criminal offence.

14.  This enables firms to provide sensitive information to us, whether this is commercially sensitive or relates to the systems they have in place to comply with their regulatory obligations. It also enables us to have open discussions with them about their plans for the business, or about changes that may be needed to improve their controls. If firms thought that this information might be made publicly available, they would be less likely to be open with us, which would materially impede our ability to fulfil our statutory objectives.

15.  These confidentiality obligations also apply to the Monitor, because we have appointed him as a skilled person under section 166 of FSMA.

16.  There are some exceptions under UK law that allow the disclosure of confidential information. For example, this allows us to share confidential information with other regulators, subject to the terms of a memorandum of understanding with that regulator. Confidential information can also be disclosed for the purposes of a criminal investigation or criminal proceedings, whether in the United Kingdom or elsewhere. However, when confidential information is shared with another person in reliance on one of these exceptions it is generally done so subject to an agreement that the other person will keep the information confidential.

17. The FCA is strongly of the opinion that a full or partial submission of the report which is subsequently public carries significant inherent risks that we ask that you consider. We therefore support the DoJ's request to file the report under seal.

18. The key issues from the FCA's perspective are set out below.

**Publication would impede the Monitor's ability to deliver on his mandate**

19. We believe that the publication of the report would impede the Monitor's ability to deliver on his mandate as a skilled person under section 166 of FSMA. In particular, we are concerned that it would impede his ability to evaluate the effectiveness of the internal controls, policies and procedures of Holdings and its subsidiaries as they relate to HSBC Group's ongoing compliance with anti-money laundering requirements under the DPA.

20. We believe that if the report was filed publicly, it would have the following negative consequences:

    a. We understand from the Monitor that many jurisdictions already visited by his team in 2013 and 2014 only agreed to allow access when they were given express assurances that the outputs of his assessments would remain confidential. If the report was made public, there is a significant risk that these jurisdictions (and possibly others which the Monitor might wish to visit in 2015 and future years) would refuse to agree to allow the Monitor to assess HSBC's operations in those jurisdictions throughout the remaining term of the DPA. The Monitor would then be unable to meet his obligations under the section 166 notice or the DPA. The impact of this for the FCA would be that we would be unable discharge fully our supervisory responsibilities in respect of HSBC Group and that the FCA's market integrity objective could be compromised. We understand from the Monitor that there are specific examples where HSBC's regulators around the world would be unwilling to assist the Monitor undertaking assessments in their jurisdictions without assurances of confidentiality.

    b. A general presumption that these reports would be made public might make it likely that some jurisdictions would refuse access for an independent monitor seeking to assess the operations of another organisation in future.

5

c. A general presumption that future reports would be made public may also be counter-productive to the FCA's desire for HSBC to deliver on its global AML and Sanctions compliance programme in an expedient and sustainable manner. For example, were key employees to be aware that future reports may criticise them by name or by title they may be less likely to continue to support HSBC's reform efforts, potentially leaving the organisation and ultimately slowing HSBC's progress. The additional risk is that the absence of confidentiality may affect the level of cooperation currently offered by HSBC employees and that they may be less willing to be open, honest and candid which would also be detrimental to FCA's ability to adequately supervise the Group.

## Publication could increase the risk of money laundering or sanctions evasion

21. The level of specificity in the report in respect of control failings identified in specific operations of the HSBC group could increase the risk of HSBC being used for money laundering or sanctions evasion purposes.

22. The report gives details of the current state of HSBC's anti-money laundering controls both at group level and in specific country operations. Our view is that publishing this information may enable money launderers and those attempting to evade sanctions controls to target and further exploit HSBC in order to facilitate increased levels of illegal activity. There are specific examples of control issues in the report which could be used to exploit HSBC which may be to the detriment of FCA's market integrity objective.

## Publication could have a negative impact on the wider industry

23. We consider that criminals may identify specific failings and/or vulnerabilities displayed in HSBC Group's control framework that may be replicated in other firms. This might increase the risk of targeted attempts to use firms for purposes connected with financial crime now and in the future, contrary to our integrity objective.

## Partial filing

24. Our view on a partial filing of the report concurs with the Monitor's views. That is, if all sensitive factual information was redacted from the report we consider that context would be lost and that the report would most likely be incomprehensible in parts.

**Conclusion**

25.   Whilst we have put forward arguments in favour of a filing of the report under seal we wish to reiterate that the FCA remains fully committed to ensuring that HSBC meets the requirements of the Direction and consequently delivers policies and procedures that are sufficient to comply with the requirements of the DPA and the FRB C&D as well as UK requirements.

Yours sincerely,

Jeremy Marsden
Head of Department, Retail Banking
Financial Conduct Authority