February 8, 2016                                                                                          (6 pages)

The Honorable Judge John Gleeson

Eastern District Court of New York

225 Cadman Plaza East

Brooklyn, NY 11201

Re: 1:12cr-00763, addendum to February 4, 2016 letter

Judge Gleeson,

Due to the recent events that have occurred between HSBC and the Department of Justice (DOJ), I am compelled to file an additional letter documenting my concerns with the stay that has been requested by both Sullivan & Cromwell (S&C) [on behalf of HSBC] and the Department of Justice (DOJ).

Additionally, I am also deeply concerned with / by the egregious behavior of both HSBC and DOJ, with regards to the settlement of a "mortgage-related" lawsuit, in the City of New York, of which- by all accounts- the Court was not aware of, nor party to, including not only the "agreement" but also the discussions that were taking place concurrently. Additionally, I find the idea that the DOJ is siding with a criminal defendant in a Court proceeding, against a citizen of the United States, to be an insult to myself, the American people (who the DOJ supposedly represents), the judicial system (where they have taken an oath as officers of the Court), as well as this Court.

At some point, the DOJ should be viewed as moving from asking the same question, with regards to the "authority" of the Court, and into the realm of "Contempt" for this Court.

As further evidence of the "cooperation" (emphasis intended), between these "opposing" parties, is the DOJ's submission (dated February 4, 2016) to the Court which almost exactly mirrors the wording used by Sullivan & Cromwell- in defense of their client HSBC.

To the first argument that involves that "settlement", I am extremely concerned by the "level of cooperation" given by US ADAs Daniel Silver and Alexander Solomon, as well as Craig Timm [Attorney for DOJ], who were all part of the setting up and negotiating the original DPA. As Silver and Solomon have been working with the Manhattan DA on the case of "mortgage abuses" by HSBC, yet they failed to

inform the Court- even with multiple opportunities to do so. [Source: Manhattan DA Office statement, February 5, 2016]

Background for this case (as taken from the Statement of Facts):

HSBC Holdings plc is a foreign Bank who wanted access to the USA financial system. HSBC Bank USA, N. A. and HSBC Holdings plc were fully aware of the Financial and Criminal Laws of the USA, the Regulation of the SEC and the Regulations of doing business in the United States of America.

HSBC Bank USA, N. A. and HSBC Holdings plc made a decision to knowingly and willingly to ignoring the Financial and Criminal Laws of the USA, the Regulation of the SEC and the Regulations of doing business in the United States of America, in the name of PROFIT.

HSBC Bank USA N. A. and HSBC Holdings plc made a decision to knowingly and willingly to engage in Illegal and Criminal practices on American Soil, and to knowingly and willingly to commit Crimes against the United States America Government.

The HSBC Bank USA, N. A. and HSBC Holdings plc made a decision to knowingly and willingly to engage in Laundering Drug Cartel's money from Mexico.

The HSBC Bank USA, N. A. and HSBC Holdings plc made a decision to knowingly and willingly to engage with Iran to Illegally move over $19. Billion. (DOJ note and letter of request filed by outside and independent Counsel)

The HSBC Bank USA, N. A. and HSBC Holdings plc provided a, "gateway for terrorists to gain access to U.S. dollars and the U.S. financial system."

More recently, HSBC Bank USA, N. A. and HSBC Holdings plc made a decision to knowingly and willingly to commit crimes against the American people, to violate the rights of the American people. One could review HSBC's testimony at the Senate Homeland Security and Governmental Affairs Committee, July 17, 2012, where the Senate questioned HSBC USA, N.A., about their dealings with a Saudi Arabian bank, Al Rajhi. The Senators were assured the proper controls were "now" in place to monitor the bank; however, according to a report on Channel 4 news (http://channel4/news/catch-up/display/playlistref/020216). [Note: this was reported on February 2, 2016], 2 senior Compliance Officers did not have the requisite requirements for the position they help.

There are potentially tens of thousands, if not hundreds of thousands, American's victims of HSBC and HSBC's willingness to engage in Illegal and Criminal practices against the American people on American soil.

When customers provided their evidence HSBC Bank USA, N. A. and HSBC Holdings plc, did HSBC Bank USA, N. A. and HSBC Holdings plc resolve their complaints fairly? To date, the best answer is a resounding "No".

HSBC Bank USA, N. A. and HSBC Holdings plc, engaged in hiding behind a veil of lies, false statements, "stone walling", and other distortions, which their victim's thought were bully-type tactics

At the end of the day, my family and I have been such victims, of HSBC Bank USA, N. A. and HSBC Holdings plc, of Illegal and Criminal practices

Rebuttal:

The parties have issued the following reasons(s) for the requested stay, which as they are essentially the same set(s) of arguments; therefore, I will address said arguments at the same time.

(1) The Government / HSBC are Likely to Succeed on the Merits: Even though S&C and DOJ are "supposedly" opposing counsel in this matter, they both continue to argue the same points. The first point is stated as to the "Success on the Merits", presumes the Second Circuit will overturn the District Court's ruling concerning the Monitor's report. To this point, neither S&C nor DOJ make a plausible case why the Second Circuit would act in the manner prescribed. As to the case law backing cited by both Counsels, Nken v Holder, dealt with the removal of a non-citizen. The framework put forth in Judge Gleeson's ruling focuses attention on the right of access under the First Amendment- which is a far, and very distant, cry from an immigration case.
   a. Further, neither Counsel has made an effort to "quantify" how each- assuming some degree of independence (which has not been guaranteed)- came to the conclusion the Merits of their argument(s) would outweigh the rights of an individual under the Constitution.

(2) As to the "irreparable" harm that could / might be caused by the opening of the Monitor's report, again neither Counsel has demonstrated how material contained in the report would damage the respective clients, i.e. HSBC and the DOJ. Further, in the event the report sheds a bright light on positive areas, one would think that both Counsels would want these items to be made public. As both S&C and DOJ have taken an antagonistic approach to both myself and the Court, it could be surmised that the report does indeed show the bank's on-going short comings, with respect to the DPA and potentially additional felony charges that could be pursued.

(3) As to whether the stay would substantially injure other parties interested in the case, by which I believe both S&C and DOJ are referring to me, I again state there is no need for a stay. Further to this, Counsel for HSBC (S&C) specifically refers to both my letter(s) to the Court and the CFPB pertaining to the timeframe being irrelevant. Unfortunately, Counsel does not recognize, nor report that there are a certain number of days within HSBC's process (i.e. "the clock"). After the "clock" expires, the process- and all associated materials- are deemed as void, and the applicant must start over again. As this example demonstrates, specifically using HSBC's timing (or clock), and their constant method of "running out the clock" on individuals, it would be difficult to successfully argue that a stay would not cause additional injury.

(4) As to "Where the Public Interest lies", Counsel(s) has chosen to reference a case that was adjudicated which dealt with the custody of a convicted felon, whose request for a stay had been denied. Again, Counsel has not shown how this case rises to the level of what is required. Additionally, S&C have stated that "The Public Interest Favors a Stay Pending Appeal", yet they

provide no data to gauge the "Public Interest". The only "Public Interest" that could possibly be served by a stay are the interest(s) of both S&C (HSBC) and DOJ.

    a. Further to this, as both S&C (HSBC) and DOJ could have a potentially damaging amount of information that might be "seen" by the public, in the event the report is made public: in effect, S&C (HSBC) could be in a position of having to defend themselves (potentially, separately or together) from additional charges that would void the DPA. In the same vein, the DOJ could be forced to review how a DPA is actually monitored, given the following facts:

        i. Recently, it was reported in the press that Monitors, such as the author of the report, are beginning to offer professional services to companies that either have a current monitor in place, or may have one in the future. These "Monitor the Monitors"-type programs get at the heart of the "veil of secrecy" currently surrounding the existing DPA arrangement. (Note: I use the term "arrangement" intentionally, as the DPAs that are either in-force or could be in-force at a future date, rely on the relationship between the DOJ (Government), the Monitor (approved by the company), and the Company (who entered into the DPA with the DOJ). If the Monitor is truly "independent", then the work product should be a "show case" where both the company and the DOJ can demonstrate that the items in the criminal complaint have been addressed. Under the current situation, no one outside of the Monitor, selected members of the DOJ, and the Company, actually know if anything has been truly addressed. In the majority of cases, even the Court must take the Monitor and DOJ assessment as being accurate.

        ii. Again, recently reported in the press, was the case of the 2 compliance officers for foreign branch of HSBC being found to not possess the required job requirements to fulfill their required responsibilities. The primary function of these two individuals was the evaluation of the compliance program within their Country, yet it was not the Monitor that found this out, it was the press. (To re-state the obvious, the control system(s) at HSBC are not functioning effectively, several years **after** the DPA was put into place).

            1. [Source note: One could review HSBC's testimony at the Senate Homeland Security and Governmental Affairs Committee, July 17, 2012, where the Senate questioned HSBC USA, N.A., about their dealings with a Saudi Arabian bank, Al Rajhi. The Senators were assured the proper controls were "now" in place to monitor the bank; however, according to a report on Channel 4 news (http://channel4/news/catch-up/display/playlistref/020216). [Note: this was reported on February 2, 2016], 2 senior Compliance Officers did not have the requisite requirements for the position they help.]

    b. As to the "public interest" argument put forth by S&C and DOJ, a simple question arises from this line of thinking. As all of the documents were in the PACER system, and a very select few in the US population (<0.3%) could actually have actually seen the document.

If the DOJ truly wanted to "advertise for potential plaintiffs", why was there no advertising using the current outlets, i.e. newspapers, etc.

There are some additional issues that neither S&C nor the DOJ have brought up that are relevant, given the current Judicial Order:

1. As S&C have had the Monitor's report as well as the Court Order to submit their redacted requests by Friday, February 12, how much of the work has actually been completed? (The reason for this question is to determine how serious S&C and HSBC have taken the Court's order, given the looming deadline of February 12, 2016)
2. As DOJ have had the Monitor's report, as well as the Court Order, to submit their redacted requests by Friday, February 12, how much of the work has actually been completed? (The reason for this question is to determine how serious DOJ have taken the Court's order. [see above])
    a. As a subsection to (1) and (2), one would expect that greater than 75% of the work would have been completed by now. If, in fact, no- or very little- work has been done by either party (S&C, HSBC, DOJ), then how does the Court intend to rectify the situation? I would infer that if the parties involved have not taken the Order seriously, then a stay of said order is wrong and should not be granted. Using simple math and S&C amount of pages that need to be redacted, (assuming 600 pages, which is well above the number listed by S&C, and assuming an 8 hour workday): 1 lawyer could review 75 pages per day, given the resources of both S&C and the DOJ, assuming 10 lawyers on the project, the work could be completed very quickly. (each lawyer only having to review roughly 8 pages per day.
        i. Further, for the attorneys / firms who have disregarded the Order, should sanctions apply?
        ii. Would such an act qualify as "Contempt of Court"?
3. Given the particular nature in which my initial letter started a cascade of events, including the sale of the mortgage, and the subsequent "use" of the sale by S&C to attempt to remove the case from review, i.e. disqualify my letter, etc., :
    a. Did S&C provide advice to HSBC, in any manner, into different methods to get my situation disqualified?
    b. Please note, this would include advice given to any third party companies, who in-turn presented the findings to HSBC.
        i. If affirmative: who, when, and what information, etc., was given by S&C (either directly or indirectly) and who was the receiver at HSBC?
    c. Did DOJ provide any guidance or advice to either S&C or HSBC, or another party who could advise either S&C / HSBC, as to any methods to get my situation disqualified?
        i. If affirmative: who, when, and what information, etc., was given by DOJ and who was the receiver at either S&C (or third party) and / or HSBC?
4. Finally, as to the Monitor's report itself. The Court instructed all parties with copies of said report to submit redactions to the Court, on an <u>independent</u> basis. As I have stated above, the

    letters requesting a stay by both DOJ and S&C look vaguely familiar in both the design of the work product, as well as the cases cited.
5. Finally, neither DOJ nor S&C have answered one of the central questions put forth by the Court concerning the "testing" of the data that is received by the Monitor. Indeed, from the discussions in Court, it was pointed out that a "foreign" entity could potentially fabricate the information and, under the current rules, this data would be taken as "proof" the controls were working. The Court has gone to great lengths to examine this type of behavior and subsequently pointed this area of concern to both parties.

In summary, given the nature of the report and how it could impact my family, I respectfully submit that the Court reject the motion for a stay and maintain the redaction deadline of February 12. I make this motion with the knowledge and my personal experience of HSBC's method of "running out the clock". My fear Is that any stay- or delay of any kind- will result in HSBC's continued abuse of the spirit, if not the letter, of the DPA. Additionally, as to the questions I posed in the above sections, I would appreciate the Court's assistance in directing Counsel(s) to answers to these questions, and having said answers filed along with the docket. (This request is being made in this manner so the answers are treated and entered into the record as testimony).

I appreciate the Court's attention with this matter.

All the best,

*Hubert Dean Moore, Jr.*

Hubert "Dean" Moore, Jr.