

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

---

F. #2009R02380

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 1, 2016

BY ECF

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. HSBC Bank USA, N.A. and HSBC Holdings PLC
                Criminal Docket No. 12-763 (AMD)

Dear Judge Donnelly:

        Pursuant to the Court's July 1, 2013, order directing the government to file quarterly reports regarding the implementation of the deferred prosecution agreement ("DPA") in the above-captioned matter, the government submits this status report. As described in more detail below, the independent corporate compliance monitor, Michael G. Cherkasky (the "Monitor"), submitted to the government and to HSBC his Second Annual Follow-Up Review Report (the "Follow-Up Review") on January 20, 2016. As contemplated by the DPA, the Follow-Up Review analyzes HSBC's anti-money laundering ("AML") and sanctions compliance program and describes areas of progress and concern. The government has reviewed the Follow-Up Review's findings and recommendations and discussed them with both the Monitor and HSBC.

        The Follow-Up Review consists of four interrelated components: (a) monitoring of HSBC Group-level enhancements to the AML and sanctions compliance program; (b) phased reviews of nine of HSBC's country-level operations; (c) thematic reviews of HSBC's AML and sanctions compliance program as it relates to the bank's trade finance, private banking, and correspondent banking businesses; and (d) monitoring of remediation efforts and programmatic enhancements.

        Overall, HSBC continues to take significant steps toward meeting the most stringent requirement of the DPA, namely that it implement the highest or most effective AML standards throughout the bank's operations. Indeed, while significant work remains, both the Monitor and the government agree that HSBC is committed to meeting this goal. To that end,

The Honorable Ann M. Donnelly
April 1, 2016
Page 2

the Monitor found that HSBC made commendable progress in building an effective AML and sanctions compliance program during 2015.  The Monitor was especially complimentary of HSBC's "tone at the top," which he found inculcates a pro-compliance culture within the organization, helps to close significant compliance gaps, and provides a sturdy foundation to sustain compliance improvement over time.  These cultural improvements were evident in the bank's most recent Enterprise Wide Risk Assessment, in which employees provided candid self-assessments of sanctions screening and AML transaction monitoring processes.  The Monitor believes this demonstrates the good intentions and prioritization of financial crime compliance at the highest levels of HSBC.

The Monitor also cited HSBC's significant investment in budgetary, personnel, and IT resources over the last year.  The bank allocated more than $680 million to its Financial Crime Compliance ("FCC") sub-function; it added 2584 compliance personnel to the FCC sub-function's headcount across Group, regional, and country operations; it commenced deployment of a significantly upgraded customer sanctions screening system in the U.S. and other markets; and it began roll-out of AML detection scenarios that are used to monitor individual customers, corporate customers, correspondent accounts, and counter-parties.

The Monitor further noted that HSBC is improving the bank's know your client, or "KYC" practices in some countries.  He also found that that the bank continues to lay the foundation for a strong sanctions compliance program.  For example, the Monitor found HSBC assembled a strong leadership team with deep sanctions experience; it developed an electronic portal that contains the most current sanctions guidance and is accessible to all employees; and it engaged a third party to study all of the bank's 2014 voluntary disclosures and develop proactive steps to avoid such breaches in the future.

Although HSBC has and continues to take meaningful steps toward reforming its AML and sanctions compliance program, the Monitor expressed concerns about HSBC's lack of progress in certain areas.  Significantly, however, the Monitor believes that HSBC is working in good faith to address these concerns, including with respect to the examples set forth below.

For instance, although the Monitor lauded the additional resources HSBC has dedicated to the FCC sub-function in its effort to overhaul AML and sanctions compliance, he noted that the sub-function's development has been slow and hampered by a lack of influence within the organization, especially at the business and local levels.  The Monitor also expressed concern with the FCC sub-function's lag in operationalizing new global AML and sanctions policies and procedures across the Group, as well as the immaturity of its monitoring and testing capabilities.

The Monitor also found KYC deficiencies – ranging in severity – in his country reviews.  For instance, certain affiliates neglected to collect necessary customer information upon account opening or to update customer profiles regularly or after significant changes to customers' risk ratings.

The Honorable Ann M. Donnelly
April 1, 2016
Page 3

   With respect to compliance technology, the Monitor continued to detect inadequacies in certain affiliates' sanction screening systems. As noted in the government's April 1, 2015, status report letter to the Court, the Monitor believes that one of the most significant impediments to HSBC's development of a sustainable program is its compliance technology. The Monitor continues to believe that a great deal of work remains to be done in this area, although he recognizes that overhauling systems on such a considerable scale is complex, expensive, and time-consuming.

   By way of example, the Monitor learned that when HSBC's settlement and clearing system interfaced with the SWIFT payment system, a formatting mismatch between the two systems sometimes resulted in the truncation or omission of certain data in outgoing SWIFT messages. In another example, the Monitor detected inadequacies in some locales' sanctions screening systems whereby insufficient data was fed to the automated screening systems, thus impeding those systems' ability to detect high-risk transactions. Elsewhere, systems' alert scenarios required further refinement to more effectively detect high-risk transactions.

   In one country review, the Monitor's team found that the HSBC affiliate in that location had a U.S. dollar correspondent customer that was banking nested customers. The Monitor learned that the affiliate did not detect the nested activity, in part, because its system mistakenly identified the correspondent account as a different type of account. Thereafter, the Monitor realized that many HSBC affiliates have similarly misclassified correspondent accounts, potentially causing those affiliates not to detect and prevent risky transactions.

   As a result of the Monitor's foregoing concerns and others, at this mid-point in the DPA term, he remains unable to certify that the bank's compliance program is reasonably designed and implemented to detect and prevent violations of AML and sanctions laws. Nor can the Monitor currently certify that HSBC has implemented and adhered to all of the remedial measures outlined in paragraph 81 of Attachment A of the DPA.

   Pursuant to the terms of the DPA, the Follow-Up Review issued remedial recommendations to HSBC. On March 21, 2016, HSBC responded to the Monitor's suggested recommendations. Discussions with the Monitor and HSBC about the proposed recommendations are ongoing. With respect to his previously issued recommendations, the Monitor reported that HSBC has fully implemented some, but many remain outstanding.

   In sum, although HSBC made significant progress last year, the Monitor believes that the bank continues to face significant challenges in implementing an AML and sanctions compliance program that effectively detects and prevents potential financial crime. The

The Honorable Ann M. Donnelly
April 1, 2016
Page 4

government will continue to closely monitor HSBC's progress in complying with the DPA, and stands ready to pursue all available remedies should HSBC fail to adhere to the DPA's terms.

                Respectfully submitted,

                ROBERT L. CAPERS
                United States Attorney

By:   /s/ Alexander A. Solomon
        Alexander A. Solomon
        Julia Nestor
        Assistant U.S. Attorneys

        M. KENDALL DAY
        Chief, Asset Forfeiture and
        Money Laundering Section
        Criminal Division
        United States Department of Justice

By:   /s/ Laura Billings
        Laura Billings
        Trial Attorney

cc: All Counsel of Record (via ECF)